**Robert E. VANDIVER, Petitioner–Appellant,**

v.

**Phyllis VANDIVER, Respondent–Respondent.**

No. 15630.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 14, 1989.

Norman E. Rouse, Collins, Webster & Rouse, Joplin, for petitioner-appellant.

Robert P. Warden, Joplin, for respondent-respondent.

FLANIGAN, Presiding Judge.

This action for dissolution of marriage was instituted by Robert E. Vandiver, petitioner in the trial court and appellant here, against his wife Phyllis Vandiver, respondent in the trial court and respondent here. The parties, who will be referred to by their first names, were married on April 2, 1981, and separated on May 26, 1986. No children were born of the marriage. At the time of the trial, held in November 1986, Robert was 62 and Phyllis was 60.

After the trial, the trial court made extensive findings of fact and entered a judgment which dissolved the marriage, awarded Robert certain nonmarital property and "approximately 60 percent" of the marital property, and awarded Phyllis certain nonmarital property and "approximately 40 percent" of the marital property. The judgment further provided that "each party is awarded any items of personalty that they had in their possession at the time of the dissolution hearing, not [otherwise] specifically set out." Neither party was awarded maintenance. Robert appeals.

In general, Robert's contentions on appeal are that the trial court erred: (1) in valuing the "tipper business" at $12,000; (2) in valuing Phyllis's pension benefit at $8,640; and (3) in failing to divide, on the 60 percent–40 percent basis, $30,000 withdrawn by the parties from their joint account when they separated.

■ Robert's first point is that the trial court erred in placing a value of $12,000 on the "tipper business" which was treated as marital property and included in that portion of the marital property which was awarded to Robert. Robert argues that there was no evidentiary support for the trial court's valuation and that this court should remand the cause for additional evidence on that issue or accept Robert's evidence that this item had a value of $850.

Prior to the marriage Robert owned and operated a business called the Revan Company, apparently unincorporated, which manufactured water valve controls. He continued to operate the Revan Company throughout the marriage. Phyllis was employed at a bank prior to the marriage, and that employment continued throughout the marriage.

In the fall of 1981 the Revan Company lost a major customer. To offset that loss, Robert and Phyllis bought "the tipper business" for $18,000 and began manufacturing and selling tippers. A tipper is a steel bracket which holds a five-gallon bottle of water and "makes it easy to pour out bottled water." The assets acquired in the purchase consisted primarily of machinery and a customer mailing list. The tipper business was incorporated into the operations of the Revan Company.

At the trial Robert testified that Phyllis kept the records of the Revan Company, made most of its deposits, wrote its checks, and kept "the income ledger." Apparently the acquisition of the tipper business achieved the purpose of replacing the loss of revenue which the Revan Company incurred by reason of the loss of its principal customer in 1981. Robert introduced into evidence the profit and loss statement of the Revan Company for the years 1980 through 1985, which included the operations of the tipper business.

Although Phyllis worked at the bank, she also worked after-hours with the tipper business. She testified, without objection by Robert's attorney, that the tipper business had a value of "at least $20,000." She repeated that testimony on cross-examination by Robert's attorney. Robert introduced evidence that the machinery purchased in connection with the tipper business was worth only $850 at the time of trial. The trial court was not required to accept that testimony. The major items of the machinery were 1954 models and were still in operation at the time of the trial.

The foregoing evidence makes it clear that the trial court was justified in lending considerable weight to Phyllis's valuation of the tipper business although, as Robert emphatically argues, she conceded that she did not know the value of the machinery, nor did she know what inventory there was on hand in the tipper business on the day of the trial.

Phyllis and Robert had jointly acquired the tipper business, Phyllis was its principal bookkeeper, and she made substantial contributions to its physical operations. With the possible exception of Robert, Phyllis appears to be the person most qualified to estimate the value of the tipper business.

The trial court's valuation of the tipper business at $12,000 was well within the range of, and supported by, substantial evidence. Robert's first point has no merit.

■ Robert's second point is that the trial court erred in valuing Phyllis's pension benefit at $8,640 "because there is no substantial evidence available to support such a finding."

Through an officer of the bank at which Phyllis was employed, Robert introduced Exhibit 9 which showed the benefits and provisions of the bank's retirement plan. Robert's reply brief states: "The issue before the trial court was the determination of the present value of a monthly benefit of $245.60 for a female of the age of 59 years, 7 months." According to information made available to the trial court by Robert, with perhaps the tacit assent of Phyllis, Phyllis would have been entitled to a monthly benefit of $245.60 if she had retired on May 1, 1986, about four weeks prior to the separation. According to a certified public accountant, based on that information, the present value of the pension benefit was $33,288. The letter containing that information is dated November 26, 1987, and it is unclear whether such was the value on the date of the letter or on May 1, 1986.

The trial court, in its initial findings, treated Phyllis's pension benefit as marital property, awarded that item to her, but assigned no value to it. By amendment the trial court found that "only 5 years of this pension plan was accumulated during the marriage and [Phyllis] contributed 17 years

to the pension plan prior to the marriage." The court then assigned a value of $8,640 to the "pension plan which was previously awarded to [Phyllis]."

Construed in its entirety, the trial court's judgment as amended apparently treated $5/22$ of Phyllis's pension benefit as marital property, assigned a value of $8,640 to that $5/22$ interest, and awarded it to Phyllis. The $17/22$ portion of Phyllis's pension plan was treated as her separate property. Thus it appears that the trial court valued the entire pension benefit at approximately $38,016, which exceeded the estimate of Robert's certified public accountant.

Exhibit 9, together with other evidence including Phyllis's age, employment history, and condition of good health, supported a calculation of the present value of Phyllis's pension benefit. The value of $8,640, assigned by the trial court to a $5/22$ interest in that benefit, was supported by the evidence.

In his argument under his second point, as distinguished from the point itself, Robert states: "The entire pension plan was acquired during the marriage and as such should be considered as marital property." He argues that the entire, and not merely $5/22$ of it, should have been treated as marital property and divided as such.

This issue, not raised in Robert's second point and "advanced for the first time in the argument portion," has not been preserved for appellate review. *Berger v. Huser*, 498 S.W.2d 536, 539[2] (Mo.1973); *Carnahan v. American Family Mut. Ins. Co.*, 723 S.W.2d 612, 614[1] (Mo.App.1987); Rule 84.04 V.A.M.R.

A gratuitous examination of the entire record, including the paramount fact that the portion of the marital property awarded to Robert substantially exceeded that awarded to Phyllis, discloses no plain error within the meaning of Rule 84.13(c) V.A. M.R. Robert's second point has no merit.

■ Robert's third point reads: "The trial court erred in the application of its finding that the marital assets should be divided 60 percent to [Robert] and 40 percent to [Phyllis] because the court failed to divide

approximately $30,000 retained by the parties according to [that] formula."

At the time of the separation Phyllis and Robert, by agreement, withdrew $30,000 from a joint account. It is Robert's position that the trial court, in its judgment, should have awarded Robert $18,000 and Phyllis $12,000, consistent with a 60/40 division, but that the judgment in fact divided the $30,000 equally.

In making its division of the property, both marital and nonmarital, the judgment of the trial court specifically referred to the fact that each of the parties had retained $15,000 from the joint account. The judgment then itemized the other assets, marital and nonmarital, awarded to each. Initially the judgment recited that "a fair and equitable division" of the marital property "would be obtained by awarding Robert 60 percent and Phyllis 40 percent." By later amendments, however, the court assigned a value of $8,640 to a portion of Phyllis's pension benefit, as discussed under point 2, and also awarded a pole barn, valued at $6,362, to Robert. One of the amendments to the judgment commented that the marital property division was *"approximately"* 60 percent to Robert and *"approximately"* 40 percent to Phyllis. (Emphasis added.)

It is clear that the court, in its meticulous order distributing the assets, did so item by item, with values assigned, and that it did not intend a precise 60/40 division. It is also clear that the trial court did not intend to apply the 60/40 division to the $30,000 which the parties had split evenly when they separated. See the provision of the judgment quoted in the second paragraph of this opinion. The actual division of the marital assets gave Robert 58.3 percent and Phyllis 41.7 percent. Robert's third point has no merit.

THE JUDGMENT IS AFFIRMED.

MAUS and PREWITT, JJ., concur.